UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - -X
                                          |
DEREK OUBRE,                              |
    Plaintiff-Counterclaim Defendant,     |    05 Civ. 2062 (LLS)
                                          |
    -against-                             |    **OPINION AND ORDER**
                                          |
CLINICAL SUPPLIES MANAGEMENT, INC.,       |
    Defendant-Counterclaim Plaintiff.     |
                                          |
- - - - - - - - - - - - - - - - - - - - -X

Derek Oubre, a New York resident,[1] filed a complaint in New York Supreme Court, New York County, against his former employer, Clinical Supplies Management, Inc. ("CSM"), a North Dakota corporation with its principal place of business in Fargo, North Dakota. CSM removed the case to this court and asserted several counterclaims. CSM now moves pursuant to 28 U.S.C. § 1404(a) for a change of venue to the United States District Court for the District of North Dakota.

I. <u>Background</u>

CSM assists pharmaceutical companies with clinical drug trials. Oubre alleges that he and CSM signed a written

---

[1] CSM asserts that, at times relevant to the lawsuit, Oubre was a resident of either Washington D.C. or New Jersey. However, CSM does not dispute that Oubre currently is, and at the commencement of this action was, a New York resident. (Def.'s Mem. L. Supp. Mot. Transfer at 13.)

employment contract in November 2001, whereby CSM agreed to employ him as a financial consultant for thirty-six months at $50.00 per hour plus an annual stipend for board service and reimbursement of business expenses. CSM also allegedly granted him options to acquire 11,112 shares of CSM stock. Oubre claims CSM breached the 2001 employment agreement by firing him in March 2004 and by failing to pay him his salary and grant him the stock options.

CSM alleges that Oubre forged the signature of Gerald Finken, CSM's chief executive officer, on the employment and stock option contracts. According to CSM, Oubre worked for CSM from November 2001 to September 2003 pursuant to an unwritten agreement, which did not entitle him to stock options.

In November 2003, while still employed by CSM but allegedly without its knowledge, Oubre became a director and chief financial officer of LaGray Chemical Corp., an Illinois pharmaceutical company based in Chicago and Ghana.

Oubre and CSM acknowledge they made an employment agreement in December 2003, whereby Oubre became CSM's full-time chief financial officer and interim chief operating officer as of September 1, 2003, and CSM granted him ten percent of CSM stock. In turn, Oubre was to generate a business plan for CSM's packaging and labeling operation, and prepare CSM's financial

statements, among other things. Oubre and CSM each claim that the other breached the 2003 employment agreement.

Oubre also signed non-competition and confidentiality agreements in September 2003. CSM claims he breached these agreements and diverted corporate opportunities from CSM, in violation of his fiduciary duty of loyalty, while he was employed by LaGray. Oubre contends that CSM officers were aware of his relationship with LaGray, and that LaGray does not compete with CSM.

II. Motion to Transfer

Section 1404(a) of title 28 of the United States Code provides that, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The action could have been brought in the District of North Dakota because venue would be proper and CSM would be subject to process there.

In determining whether venue should be transferred to the District of North Dakota for the convenience of parties and witnesses, the relevant factors include:

> (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof;

> (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

Lewis v. CRI, Inc., No. 03 Civ. 651 (MBM), 2003 WL 1900859, at *2 (S.D.N.Y. Apr. 17, 2003). The court has broad discretion to balance these factors and to consider the evidence of convenience and fairness on a case-by-case basis. In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir. 1992), citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S. Ct. 2239, 2243, 101 L. Ed. 2d 22 (1988).

"Absent a clear cut and convincing showing by defendant that the balance of convenience weighs strongly in favor of the transferee court, plaintiff's choice of forum will not be set aside." Gen. State Auth. (of Pa.) for Benefit of Crompton-Richmond Co., Inc. v. Aetna Cas. & Sur. Co., 314 F. Supp. 422, 423 (S.D.N.Y. 1970); see also Ford Motor Co. v. Ryan, 182 F.2d 329, 330 (2d Cir. 1950) (defendant must make a strong case for transfer).

III. Discussion

    A. Convenience of Witnesses

The convenience of witnesses is a major factor in evaluating a transfer motion. 800-Flowers, Inc. v. Intercontinental Florist, Inc., 860 F. Supp. 128, 134 (S.D.N.Y. 1994). "When weighing the convenience of the witnesses, courts must consider the materiality, nature, and quality of each witness, not merely the number of witnesses in each district." Royal & Sunalliance v. British Airways, 167 F. Supp. 2d 573, 577 (S.D.N.Y. 2001). To enable the court to make that evaluation, a movant relying on the convenience of witnesses "must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978).

    (1) LaGray Witnesses

Oubre and CSM both recognize the importance of testimony from LaGray employees Paul Lartey and Alexandra Graham. However, because they are both based in Ghana (Lartey Aff. ¶ 8; Graham Aff. ¶ 8) and will have to travel a long distance to either proposed venue, they are not considered in the venue transfer analysis. Varsity Spirit v. I.I.P. Inc., No. 03 Civ. 2069 (LLS), 2003 WL 22772638, at *2 (S.D.N.Y. Nov. 24, 2003)

(convenience of witnesses who do not reside in either proposed forum does not significantly affect the transfer analysis).

### (2) CSM's Witnesses

CSM's North Dakota witnesses are four of its officers and employees, one former officer, its outside counsel and two accountants from Eide Bailly, CSM's outside auditors.[2]

Oubre and CSM both recognize the importance of testimony from at least one Eide Bailly witness regarding Oubre's claims to CSM stock. That witness will likely be Scott Swanholm, the accountant principally responsible for Eide Bailly's relationship with CSM. (Swanholm Aff. ¶ 2.) Since it is not clear what, if anything, the other Eide Bailly accountant would add to Swanholm's testimony, his testimony is discounted in the transfer analysis. Factors Etc., 579 F.2d at 218.

The parties also recognize that Gerald Finken is an important witness, as is CSM's outside counsel, who was involved in the negotiation and signing of Oubre's employment contracts.

The testimony of four other CSM witness also seems material. Jessica Mather, executive assistant to Mr. Finken and Oubre, would testify to Oubre's alleged failure to fulfill his financial planning and reporting responsibilities. (Mather Aff.

---

[2] CSM also points out that three of Oubre's witnesses reside in North Dakota and eleven reside in California. CSM, however, cannot rely on the convenience of plaintiff's witnesses to support its motion to transfer. Marks v. Fireman's Fund Ins. Co., 109 F. Supp. 800, 803 (S.D.N.Y. 1953).

¶ 3.) Brian Moe, CSM's Vice President of Operations, would testify to Oubre's alleged unavailability to CSM staff, his pursuit of a packaging and labeling facility for CSM, and his work on behalf of LaGray. (Moe Aff. passim.) Brian Keller, CSM's former finance director, would address Oubre's alleged mishandling of CSM's finances. (G. Finken July 7, 2005 Aff. ¶ 10.) Kathleen Finken, a member of CSM's board of directors, would testify to whether Oubre and CSM entered the employment and stock option agreements in 2001. (K. Finken Aug. 30, 2005 Aff. ¶ 3.)

Thus, there are seven material CSM witnesses whose convenience favors transfer.

### (3) Oubre's Witnesses

Oubre himself is an essential witness. In addition, Oubre identifies two material New York witnesses to rebut CSM's claims that he neglected his duties to CSM and diverted opportunities from CSM: Phillip McKinley, a former CSM consultant who worked with Oubre pursuing packaging and labeling and sales opportunities in the New York area, and Margaret Bogdan, a former CSM employee who worked on CSM's financing, administration and contracting processes with Oubre from his New York apartment.

\*     \*     \*

In sum, seven of CSM's material witnesses are located in North Dakota while only three of Oubre's material witnesses reside in New York. The disparity is less substantial than the numbers appear, however, because two of Oubre's witnesses are non-parties, while four of CSM's seven witnesses are its employees. Indian Harbor Ins. Co. v. Factory Mut. Ins. Co., No. 05 Civ. 2564 (PKL), 2005 U.S. Dist. LEXIS 17253, at *12 (S.D.N.Y. Aug. 17, 2005) (convenience of non-party witnesses is accorded more weight than that of party witnesses). Hence, the convenience of material witnesses only weakly favors transfer.

B. Location of Relevant Documents

"In today's era of photocopying, fax machines[,] Federal Express", Coker v. Bank of Am., 984 F. Supp. 757, 766 (S.D.N.Y. 1997), and electronic document transmission, the location of documents is entitled to little weight unless the movant makes a detailed showing of the burden it would incur absent transfer. Royal Ins. Co. of Am. v. Tower Records, Inc., No. 02 Civ. 2612 (PKL), 2002 U.S. Dist. LEXIS 20109, at *17 (S.D.N.Y. Oct. 22, 2002).

There is no such showing here. CSM merely states that it has documents related to its packaging and labeling operation and to Oubre's performance at its North Dakota headquarters, and that Eide Bailly has three or four boxes of documents relevant

to Oubre's damages in North Dakota. This factor is therefore neutral.

C. <u>Convenience and Relative Means of the Parties</u>

"A transfer should not merely shift the burden of inconvenience from one party to the other." <u>Dwyer v. General Motors Corp.</u>, 853 F. Supp. 690, 693 (S.D.N.Y. 1994). "Where a disparity exists between the means of the parties, such as in the case of an individual suing a large corporation, the court may consider the relative means of the parties in determining where a case should proceed." <u>800-Flowers</u>, 860 F. Supp. at 135; <u>USA Interactive v. Savannah Air Ctr., LLC</u>, No. 02 Civ. 3659 (LLS), 2002 WL 1808236, at *2 (S.D.N.Y. Aug. 7, 2002) (relative means of the parties is a more significant factor when one party is an individual).

Here, CSM is a corporation that does business worldwide (G. Finken Aug. 30, 2005 Aff. ¶ 21), while Oubre is an individual who has not been steadily employed since leaving CSM in March 2004. (Pl.'s Mem. L. Opp'n Mot. Transfer at 25.) Relative to their resources, Oubre's burden litigating in North Dakota would be heavier than CSM's burden litigating in New York. The convenience and relative means of the parties therefore weighs against transfer.

D. Locus of Operative Facts

In determining the locus of operative facts, courts look to the "site of the events from which the claim arises." 800-Flowers, 860 F. Supp. at 134. Contract disputes arise "where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." Prudential Sec. Inc. v. Norcom Dev., Inc., No. 97 Civ. 6308 (DC), 1998 WL 397889, at *4 (S.D.N.Y. July 16, 1998) (citations omitted).

The employment agreements were apparently negotiated and executed in both fora. (Oubre Sept. 12, 2005 Aff. ¶ 4; Oubre Aug. 8, 2005 Aff. ¶¶ 4, 15; G. Finken July 7, 2005 Aff. ¶ 4.) Similarly, Oubre was to work for CSM in New York,[3] while CSM's performance, paying Oubre and issuing him stock and stock options, would naturally take place at CSM's headquarters in North Dakota. Thus, Oubre's alleged breach of the employment agreements occurred in New York, while CSM's alleged breach occurred in North Dakota.

CSM's counterclaims relate to Oubre's dealings with LaGray. Oubre likely conducted business with LaGray either at its

---

[3] The 2003 non-competition agreement provides, "This agreement shall be governed by and enforced to the fullest extent under the laws of the State of New York, where Derek Oubre will be living and working." (Affirmation of Russell Bogart Supp. Mot. Transfer Ex. M.) Further, while Oubre was undoubtedly present in North Dakota many times during his tenure with CSM (G. Finken Aug. 30, 2005 Aff. ¶¶ 16, 20), the bulk of his time seems to have been spent in New York. (Oubre Aug. 8, 2005 Aff. passim.)

Chicago offices or from his home in New York. In either case, there is no showing that he dealt with LaGray in North Dakota.

The locus of operative facts is not concentrated in either the transferor or transferee forum. Thus, this factor is neutral as to transfer.

E. <u>Availability of Process to Compel Attendance of Unwilling Witnesses</u>

A party relying on this factor must show that non-party witnesses are unwilling to testify at trial. <u>Citigroup Inc. v. City Holding Co.</u>, 97 F. Supp. 2d 549, 562 (S.D.N.Y. 2000).

The only witness whom either party asserts will be unwilling to testify at trial is Brian Keller, CSM's former finance director, who can be compelled to testify in North Dakota but not in New York. Although his testimony may be highly material (the alleged mishandling of CSM's finances), since both Mr. Finken and Ms. Mather may testify willingly on those matters, his testimony may not be essential. Furthermore, CSM acknowledges that Keller's deposition testimony will be available and gives no reason why his deposition or videotaped testimony would be insufficient at a trial in New York, aside from a general preference for live testimony. (Def.'s Mem. L. Supp. Mot. Transfer at 19-20.); <u>Dealtime.com v. McNulty</u>, 123 F. Supp. 2d 750, 757 (S.D.N.Y. 2000) (availability of compulsory process is neutral given the option of videotaping testimony of

-11-

witnesses unwilling to travel); Citigroup, 97 F. Supp. 2d at 561-62. This factor somewhat favors transfer.

F. Forum's Familiarity with Governing Law

Familiarity with the governing law is generally given little weight in considering motions to change venue. AEC One Stop Group, Inc. v. CD Listening Bar, Inc., 326 F. Supp. 2d 525, 531 (S.D.N.Y. 2004). That is especially true where the applicable foreign law is settled. Royal Ins. Co. of Am., 2002 U.S. Dist. LEXIS 20109, at *24.

CSM asserts without contradiction that its counterclaim under the faithless servant doctrine, which seeks reimbursement of salary and expenses for Oubre's breach of his duty of loyalty, is a matter of first impression under North Dakota law.[4] Where, as here, the case involves unsettled law of the transferee forum, this factor weighs in favor of transfer to that forum as being more familiar with that body of law. However, it weighs only slightly in favor of transfer because (a) as noted above, the whole factor itself has little weight, and (b) if I retain the case, New York's substantive law on the point is clear,[5] and New York courts presume that the substantive

---

[4] The other claims and counterclaims are governed by the relevant agreements between the parties and by settled North Dakota or New York law, which either court could readily apply.

[5] See e.g., Phansalkar v. Andersen Weinroth & Co., L.P., 344 F.3d 184 (2d Cir. 2003) (clarifying the faithless servant doctrine under New York law).

law of another state (when it is unsettled) resembles New York's and other states' law. See Rogers v. Grimaldi, 875 F.2d 994, 1003 (2d Cir. 1989).

   G. Plaintiff's Choice of Forum

On a motion to transfer venue, a plaintiff's choice of forum will not be disturbed unless the movant makes a clear and convincing showing that the balance of convenience favors an alternate forum. Hubbell Inc. v. Pass & Seymour, Inc., 883 F. Supp. 955, 962 (S.D.N.Y. 1995).

CSM asserts that plaintiff's choice of forum should be given less deference than usual, because none of the pertinent facts took place in New York. Oubre alleges, however, that he executed both employment agreements and negotiated the 2003 agreement in New York and that he worked for CSM from his New York apartment. The 2003 non-competition agreement provides that "Derek Oubre will be living and working" in New York. See fn.3. These contacts, coupled with the fact that Oubre resides in this district, give weight to plaintiff's choice of forum.

CSM argues that Oubre's choice of forum should be accorded less weight because he originally filed suit in New York state court, rather than this federal court to which CSM removed it. Plaintiff's choice of forum is given deference because it is presumed to be a convenient geographic location in which to litigate. That presumption is no less valid when, as here, the

-13-

plaintiff files suit in state court and the defendant later removes the case to a federal court in the same venue. Innovations Enter. Ltd. v. Haas-Jordan Co., Inc., No. 99 Civ. 1681 (EHN), 2000 WL 263745, at *2 (E.D.N.Y. Jan. 4, 2000) ("[V]enue is primarily an issue of geography, and plaintiff has clearly expressed a preference for litigating within the [federal district that] encompasses the county in which plaintiff originally filed the action.").

Therefore, plaintiff's choice of forum weighs heavily against transfer.

H. Trial Efficiency and the Interests of Justice

CSM argues that North Dakota has a superior local interest in adjudicating the case because it involves North Dakota corporate governance laws and a locally owned North Dakota corporation. New York also has an interest in adjudicating the case, however, because the alleged breach of the non-competition agreement will be decided under New York law and the outcome of the case will affect the rights of a New York resident under employment agreements signed and to be performed in New York.

CSM asserts that dockets are less congested in the District of North Dakota than here. While there may be greater overall docket congestion in this district than in the District of North Dakota, under our individual calendar system I could likely try this case as soon or sooner than it would be tried in North

-14-

Dakota. See Dwyer, 853 F. Supp. at 695 (Motley, J.) (relative trial calendar congestion did not favor transfer where "this particular court's docket is not nearly as back-logged as the majority of the dockets in this District.").

Hence, those factors are neutral as to transfer.

IV. Conclusion

In sum, the convenience and ready availability of material witnesses and the forum's familiarity with the governing law weigh somewhat in favor of transfer. The convenience of the parties favors retaining the action. The decisive factor is plaintiff's choice of forum. "Absent a clear cut and convincing showing by defendant that the balance of convenience weighs strongly in favor of the transferee court, plaintiff's choice of forum will not be set aside." Gen. State Auth. (of Pa.) for Benefit of Crompton-Richmond, 314 F. Supp. at 423. There is not the requisite clear cut and convincing showing that plaintiff's choice of forum should be set aside.

Defendant's motion to transfer the action to North Dakota is denied.

So ordered.

Dated: New York, New York
       November 17, 2005

_____
LOUIS L. STANTON
U. S. D. J.